Zhu Hongjie

No. 48 Yupo South Road

Jingjiang City, Taizhou

Jiangsu Province, China

Phone: +86-13852627027

Email: zhj72007@163.com

Plaintiff in Pro Se

NO CV 30
NO CV 71

# **UNITED STATES DISTRICT COURT**
# **CENTRAL DISTRICT OF CALIFORNIA**

FILED
CLERK, U.S. DISTRICT COURT
10/3/2025
CENTRAL DISTRICT OF CALIFORNIA
BY  gsa  DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

FEE PAID

| | |
|---|---|
| Zhu Hongjie,<br>Plaintiff,<br><br>v.<br><br>Internet Corporation for Assigned Names and Numbers<br><br>Verisign, Inc.<br><br>Beijing Xinnet Digital Information Technology Co., Ltd.<br><br>Defendants | FIRST FILED Oct 3, 2025<br><br>Case No.: 2:25-cv-09642 -FLA-(SKx)<br><br>Judge:<br><br>Cause of Action:<br>(1) (Violation of the Sherman Act<br>(2) Declaratory Relief<br>(3) Unfair Business Practices<br><br>JURY TRIAL DEMANDED |

-1-

Plaintiff Zhu Hongjie ("Plaintiff"), operating as an individual business entity known as Jingjiang Jibang Network Technology Service Department, brings this Complaint against Defendants Internet Corporation for Assigned Names and Numbers ("ICANN"), VeriSign, Inc. ("VeriSign"), and Beijing Xin Net Technology Corporation Limited ("Xinnet") (collectively, "Defendants") as follows. This Complaint seeks injunctive and declaratory relief to safeguard Plaintiff's right to register the relevant domain names on a first-come, first-served basis and does not seek punitive damages.

**INTRODUCTION**

1. This action arises from Defendants' unlawful conspiracy to refuse public registration of valuable single-character domain names (e.g., a.com, 1.net), involving antitrust violations, claims for declaratory relief, and unfair business practices. For decades, Defendants have used fabricated "technical management" reasons as a pretext, while internally acknowledging that no such technical issues exist. Utilizing their collective market power, Defendants have monopolized the .COM domain name registration market and suppressed competition. Plaintiff, a domain name registrant and network technology service operator, seeks injunctive relief to terminate this anti-competitive scheme, demanding the registration of the subject domain names under the first-come, first-served registration practice, akin to Q.COM and Z.COM. Xinnet, as an ICANN-accredited registrar and partner of VeriSign, directly participated in rejecting Plaintiff's domain name registration applications, thereby facilitating Defendants' anti-competitive conspiracy.

**THE PARTIES**

2. **Plaintiff Zhu Hongjie** is a citizen of the People's Republic of China, with an address at No. 48 Yupo South Road, Jingjiang, Taizhou City, Jiangsu Province, China. His contact information is +86-13852627027 and zhj72007@163.com. Plaintiff operates an individual business named "靖江市吉邦网络技术服务部" (Jingjiang Jibang Network Technology Service Department) in China, providing domain name registration and website construction services to users. Due to Defendants' monopolistic conduct, including the inability to register and use high-value single-character domain names for commercial purposes, Plaintiff faces harm to his right to register domain names on a "first-come, first-served" basis. On July 16, 2025, Plaintiff formally applied to register 67 relevant single-character domain names through Xinnet but was refused due to Defendants' unlawful reservation policy (See Exhibit A: Application Email dated July 16, 2025, which records the details of Plaintiff's domain name registration application submitted to Xinnet, including the list of 67 applied domain names and Xinnet's rejection response).

3. **Defendant ICANN** is a California nonprofit public benefit corporation, with its principal place of business at 12025 Waterfront Drive, Suite 300, Los Angeles, California, 90094. As the coordinator and policy maker for the global Domain Name System ("DNS"), ICANN's actions directly impact fair competition and resource allocation in the domain name registration market. Its policy-making authority has evolved into market power. ICANN has long reserved single-character domain names

under false pretenses.

4. **Defendant VeriSign** is a Delaware corporation, with its principal place of business at 12061 Bluemont Way, Reston, Virginia, 20190. VeriSign operates the .COM and .NET domain name registry pursuant to an exclusive agreement with ICANN, granting it de facto control over the allocation and registration of these domain names. VeriSign conspired with ICANN and Xinnet to refuse public registration of single-character domain names.

5. **Defendant Xinnet** is a company of the People's Republic of China, with its principal place of business at 7/F, Block D, Beijing International Building, No. A18 Zhongguancun South Street, Haidian District, Beijing. As an ICANN-accredited domain name registrar and partner of VeriSign, Xinnet directly implements Defendants' anti-competitive policies, including rejecting Plaintiff's domain name registration applications, thereby participating in monopolistic conduct and contributing to market restrictions.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (Federal Question) because this action arises under the Sherman Antitrust Act, 15 U.S.C. §§ 1-7, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. For claims under state law, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over Defendants. ICANN is

headquartered within this judicial district, and VeriSign and Xinnet conduct substantial business here, including registry operations affecting California residents and businesses. Xinnet, as a partner of VeriSign and ICANN, engages in domain name registration-related activities within the United States, and its actions directly affect the U.S. market and residents of this judicial district. Defendants' anti-competitive conduct produces effects nationwide, including within this judicial district.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 15 U.S.C. § 22 because ICANN resides here, a substantial part of the events giving rise to the claim occurred here (including policy decisions and registry agreements), and Defendants are subject to personal jurisdiction here. Xinnet's participation extends to this district through its agreements with ICANN and VeriSign.

**FACTUAL ALLEGATIONS**

9. Single-character domain names (e.g., a.com, 1.net) are highly valuable digital assets due to their brevity, memorability, and commercial potential. They represent limited public resources within the DNS and should be allocated according to fair, "first-come, first-served" principles to promote competition and innovation. Furthermore, historical records show that single-character domain names like Q.COM and Z.COM were registered as early as 1997 and 1999 (See registration information for Q.COM Z.COM, proving that single-character domain names could be registered normally in 1997 and 1999, indicating that

Defendants' reservation policy did not exist from the beginning but was a later artificially implemented anti-competitive measure).

10. Since the early days of the Internet, ICANN and VeriSign have conspired to reserve these domain names under the pretext of non-existent "technical reasons." Internal documents indicate that this reservation is an economic policy choice to maintain monopolistic control, not a technical necessity. Defendants' evasion and self-contradiction regarding "technical reasons" further prove the policy nature of their monopolistic behavior, rather than technical inevitability (See Exhibit H: ICANN's Response on Technical Issues.pdf, proving the falsity of technical reasons, with no actual technical obstacles supporting the reservation policy; Exhibit B: Doctor's Letter, proving that the reservation of single-character domain names stems from policy choices, not technical issues; Exhibit C: Statement by John Berryhill, proving there are no technical reasons to reserve single-character domain names; Exhibit D: GNSO Reserved Name Working Group Report Table of Contents, proving that no documents or policies specifically target the reservation of single-letter domain names, exposing the lack of a legitimate basis for Defendants' reservation behavior).

11. The .COM Registry Agreement between the two Defendants (renewed in 2024) demonstrates that there are no technical reasons for reserving single-letter .COM domains. The renewal of this agreement is the latest evidence of Defendants' ongoing conspiracy, maintaining VeriSign's perpetual monopoly over the .COM market. Xinnet, as the implementer of this agreement, directly participated in the refusal to register.

12. On July 16, 2025, Plaintiff applied to Xinnet, an ICANN-accredited registrar and partner of VeriSign, to register the following 67 domain names: a.com, b.com, c.com, d.com, e.com, f.com, g.com, h.com, i.com, j.com, k.com, l.com, m.com, n.com, o.com, p.com, r.com, s.com, t.com, u.com, v.com, w.com, y.com, 0.com, 1.com, 2.com, 3.com, 4.com, 5.com, 6.com, 7.com, 8.com, 9.com, a.net, b.net, c.net, d.net, e.net, f.net, g.net, h.net, j.net, k.net, l.net, m.net, n.net, o.net, p.net, r.net, s.net, t.net, u.net, v.net, w.net, x.net, y.net, z.net, 0.net, 1.net, 2.net, 3.net, 4.net, 5.net, 6.net, 7.net, 8.net, 9.net. Xinnet did not respond to this application, deemed a rejection, thereby directly facilitating ICANN and VeriSign's anti-competitive policies.

13. Defendants' actions have caused harm to Plaintiff, depriving him of the opportunity to register these domain names on a first-come, first-served basis, hindering commercial use, and inhibiting his business. Although Plaintiff is aware that others have sued regarding these domains, which might not proceed to a substantive hearing for other reasons, Plaintiff still has an opportunity.

14. Previous related litigation, including Veranda Global v. ICANN (Case No. 23STCV19554), Huifen Mo v. ICANN et al. (Case No. 2:25-cv-09014), and Zheng Minjie v. ICANN et al. (Case No. 2:25-cv-04808), indicates that multiple parties have challenged Defendants. Plaintiff obtained information from the public materials of these cases.

15. Further evidence supporting Defendants' maintenance of monopoly power in the .COM domain name registration market comes from the Ninth

1  Circuit Court of Appeals' precedent in Coalition for ICANN Transparency,
2  Inc. v. VeriSign, Inc., 611 F.3d 495 (9th Cir. 2009). This precedent
3  confirmed the .COM registration market as a separate relevant market
4  (based on demand cross-elasticity and reasonable interchangeability)
5  and found that ICANN and VeriSign, through pricing and renewal terms
6  in agreements like the .COM agreement, could constitute trade
7  restraints and monopolistic conduct. This precedent reversed the lower
8  court's dismissal, upholding the independence of the .COM market and
9  the monopoly allegations. Additionally, relevant evidence includes
10 emails from VeriSign, ICANN, and the U.S. Department of Justice
11 Antitrust Division (Exhibit J), proving that ICANN itself attested to
12 the .COM domain name market being an independent market; VeriSign's
13 defense to Chinese antitrust authorities (Exhibit K), proving the
14 independent .COM market, to which VeriSign raised no objection; Civil
15 Judgment (2018) Hu 73 Min Chu No. 332 (Exhibit L), confirming the
16 independent .COM market, to which VeriSign raised no objection.
17
18 16. Defendants' conspiracy is further reflected in the 2018-2019 o.com
19 release agreement, which directly proves Defendants' abuse of market
20 dominance by imposing unreasonable regulations on domain name users:
21 the agreement set special rules for o.com (e.g., no renewal grace period
22 for the first 25 years, automatic single-year renewals, retention by
23 VeriSign for future auction upon deletion, no transfer rights, etc.).
24 These restrictions beyond registry duties are not technically
25 necessary but constitute an abuse of VeriSign's exclusive operating
26 rights, excluding competition, fixing prices, and serving as ironclad
27 evidence of horizontal conspiracy. This further strengthens the
28 significance of the 2018 changes and the substantive basis for the

1  monopoly allegations (See Exhibit E: O.COM1.pdf, Draft Second
2  Amendment to the .com Registry Agreement 2018, proving auction
3  donation confidentiality, the starting point of policy changes, and
4  special terms, exposing Defendants' conspiratorial behavior; Exhibit F:
5  O.COM2.pdf, Final Second Amendment to the .com Registry Agreement
6  2019, proving policy implementation and rules demonstrating VeriSign's
7  abuse of dominant position). Xinnet facilitated this conspiracy by
8  implementing similar policies.
9
10 17. Community opposition evidence further supports the conspiracy
11 allegations: In public comments submitted on June 20, 2018, the
12 Internet Commerce Association (ICA) strongly opposed VeriSign's
13 proposal for the release of O.COM and other single-character domains,
14 arguing that it introduced anti-competitive mechanisms, such as
15 creating exception rules for 23 single-character domains (including 5%
16 premium renewal fees, different expiration processes, no transfer
17 rights, restrictions on auction participants, etc.), setting a "dangerous
18 precedent" and undermining the equality and transparency of .COM
19 domains. The ICA emphasized that all .COM domains should be treated
20 equally and accused VeriSign of acting beyond registry duties through
21 auctions, potentially involving "sweetheart deals," contrary to ICANN's
22 core mission of promoting competition. These comments further prove
23 that Defendants' domain name reservation is not technically necessary
24 but a policy-based conspiracy to maintain monopoly, consistent with
25 Plaintiff's allegations regarding the 2024 agreement, and expose
26 ICANN's continued exclusion of competition after the 2018 policy
27 opening (See Exhibit G: ICA Opposition Comments on O.COM Proposal.pdf,
28 June 20, 2018, proving community opposition exposes monopolistic

conspiracy).

18. Furthermore, VeriSign's RSEP request submitted on November 30, 2017, intended to "open more" single-character domains through the o.com experiment but was limited to only one, exposing Defendants' intent to gradually release while maintaining control, further strengthening the conspiracy allegations (See Exhibit I: Opening More.pdf, 2017 VeriSign RSEP Request, proving VeriSign's intent to open more single-character domains through the o.com experiment but limiting it to one, exposing monopolistic control and proving Defendants' conspiratorial behavior). Xinnet, as a registrar, participated in the execution of this control mechanism.

19. Conclusion

Defendants' unlawful actions have created a time paradox: it has deprived the market of the opportunity over the past decades to allocate these domain names through a genuine "first-come, first-served" mechanism. Any future-oriented allocation mechanism (such as auctions, lotteries, trademark priority, or technical snap-catching) fundamentally deviates from the "first-come, first-served" principle and substantially rewards Defendants' illegal conduct. Plaintiff's formal application submitted on July 16, 2025, is the first and concrete action aimed at restoring the legal order. Legally, this application should be regarded as the **first and priority "first-come, first-served" request** for these specific domain names, excluding the illegal obstacles. **Therefore, the judicial remedy sought in this case supports first-come, first-served, not by creating

a new privilege, but through judicial process, providing the final, authoritative confirmation and execution of the "first-come, first-served" process that should have always existed but was illegally suppressed by Defendants.** This remedy **will not harm the legitimate interests of any other party**; any potential third-party rights currently exist only as an **unstated, potential possibility**. **The judiciary cannot refuse relief to a victim actively asserting their rights in order to protect the rights of those 'sleeping' on them.**

**Defendants' illegality (monopoly) → leads to interruption of the "first-come, first-served" mechanism → Plaintiff's application is the first action to restore this mechanism → Judicial allocation is the only way to confirm this mechanism.**

**FIRST CLAIM FOR RELIEF**

**First Claim for Relief (Violation of Sherman Act § 1 – Restraint of Trade)**

Plaintiff repeats and realleges paragraphs 1 through 18.

Defendants engaged in a contract, combination, or conspiracy in restraint of trade in violation of 15 U.S.C. § 1. Through the .COM Registry Agreement and related policies, they unreasonably restrained competition by reserving single-character domain names, fixing prices, and excluding registrants like Plaintiff. As confirmed by the Ninth Circuit Court of Appeals in Coalition for ICANN Transparency, Inc. v.

VeriSign, Inc., 590 F.3d 985 (9th Cir. 2009), such agreements may constitute trade restraints and monopolistic conduct. The conspiracy includes the anti-competitive special terms set by the o.com agreement and the "sweetheart deals" exposed by community opposition, which are not technically necessary but aimed at maintaining Defendants' market control. Xinnet, as a co-conspirator, directly executed the refusal to register.

**SECOND CLAIM FOR RELIEF**

**Second Claim for Relief (Violation of Sherman Act § 2 – Monopolization)**

Plaintiff repeats and realleges paragraphs 1 through 20.

Defendants have willfully acquired and maintained monopoly power in the .COM domain name registration market through exclusionary conduct, including domain name reservations and anti-competitive agreements, in violation of 15 U.S.C. § 2. As confirmed by the Ninth Circuit Court of Appeals in Coalition for ICANN Transparency, Inc. v. VeriSign, Inc., 590 F.3d 985 (9th Cir. 2009), the .COM registration market constitutes a distinct relevant market, independent based on demand cross-elasticity and reasonable interchangeability, and Defendants' agreement terms are not technically necessary but aimed at maintaining a perpetual monopoly. This monopoly was sustained through the abuse of dominance clauses in the 2018-2019 o.com agreement, with community opposition further proving its anti-competitive nature. Xinnet contributed to this monopoly by rejecting Plaintiff's

application to maintain market control.

**THIRD CLAIM FOR RELIEF**

**Third Claim for Relief (Declaratory Relief)**

Plaintiff repeats and realleges paragraphs 1 through 22.

An actual controversy exists regarding the legality of Defendants' single-letter domain name reservation policy. Plaintiff seeks a declaration that this policy is unlawful.

**FOURTH CLAIM FOR RELIEF**

**Fourth Claim for Relief (Unfair Business Practices – Cal. Bus. & Prof. Code § 17200 et seq.)**

Plaintiff waives any claim for punitive damages.

Plaintiff repeats and realleges paragraphs 1 through 24.

Under California law, Defendants' conduct constitutes unfair, unlawful, and fraudulent business practices that have harmed competition and Plaintiff's interests. Xinnet's refusal to register further constitutes an unfair business practice.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that the Court enter judgment

in favor of Plaintiff and grant the following relief:

A. Permanent injunctive relief prohibiting Defendants from maintaining, enforcing, or giving effect to any policy reserving all single-character domain names under the .COM and .NET top-level domains;

B. As unlawful acts are not binding, the Court is requested to order **Defendants to permit Plaintiff to register the 67 domain names; given the current "reserved" status of the domains, the Court is requested to transfer the subject domains to the Xinnet account (ID: hy873187), similar to the handling of CM.COM.**

C. Costs and reasonable expenses of this action in the amount of $1000;

D. A declaratory judgment that Defendants' single-character domain name reservation policy violates the Sherman Act and California law and is therefore unlawful;

E. Such other and further relief as the Court deems just and proper.

Dated: October 3, 2025

Zhu Hongjie,
Pro Se Plaintiff

A: Application Email (July 16, 2025)

B: ID

C business license

Exhibit List

-14-

Exhibit A



Domain Name Registration Application

Applicant: Jingjiang Jibang Network Technology Service DepartmentAddress: No. 48 Yupo South Road, Jingjiang City, Taizhou, Jiangsu ProvinceContact Person: Zhu HongjiePhone: 13852627027

    I am a member of Jingjiang Jibang Network Technology Service Department and the Nanjing branch of Beijing Xinwang Digital Information Technology Co., Ltd., ID hy873187. I would like to register 67 domain names. Please follow the procedure. The domain names to be registered are as follows:

a.com  b.com  c.com  d.com  e.com  f.com  g.com  h.com  i.com  j.com k.com  l.com  m.com

n.com  o.com  p.com  r.com  s.com  t.com  u.com  v.com  w.com  y.com

0.com  1.com  2.com      3.com  4.com  5.com  6.com  7.com  8.com  9.com

a.net  b.net  c.net  d.net  e.net  f.net  g.net   h.net  j.net  k.net  l.net  m.net

n.net  o.net  p.net  r.net  s.net  t.net  u.net    v.net  w.net  x.net  y.net  z.net

0.NET  1.NET  2.NET  3.NET  4.NET  5.NET  6.NET  7.NET  8.NET  9.NET

    Both ICANN and VeriSign have stated that registration is open. U.S. courts have already ruled in favor of plaintiffs in similar domain cases. China has already sanctioned VeriSign.

    Sincerely,Beijing Xinwang Digital Information Technology Co., Ltd.

-15-



-17-





-17-



营业执照（副本）

统一社会信用代码 92321282MA1ULID572 (1/1)

| | |
|---|---|
| 名称 | 靖江市技邦网络技术服务部 |
| 类型 | 个体工商户 |
| 经营者 | 朱红杰 |
| 组成形式 | 个人经营 |
| 注册日期 | 2013年07月15日 |
| 经营场所 | 靖江市人民公园西大门北侧（56-9）第1、2间 |
| 经营范围 | 一般项目：网络技术服务，信息技术咨询服务，计算机软硬件及辅助设备批发，计算机软硬件及辅助设备零售，电子产品销售，第一类医疗器械销售，第二类医疗器械销售；技术开发、技术咨询、技术交流、技术转让、技术推广，健康咨询服务（不含诊疗服务）（除依法须经批准的项目外，凭营业执照依法自主开展经营活动） |

登记机关 靖江市市场监督管理局 2022年09月14日

编号 321282666202209140085